[762 NYS2d 349]

ROBERT CALLAHAN et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v HUGH L. CAREY, as Governor of the State of New York, et al., Defendants, and BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Appellants.

LOUISE F. ELDREDGE et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v EDWARD I. KOCH, as Mayor of the City of New York, et al., Appellants.

First Department, June 10, 2003

## APPEARANCES OF COUNSEL

*Steven Banks* of counsel (*Richard E. Blum, Amanda Moretti* and *Andrew C. Smith* on the brief; *The Legal Aid Society* and *Robert M. Hayes, President, Medicare Rights Ctr.,* attorneys), for respondents.

*James M. Hershler* of counsel (*Deon J. Nossel* on the brief; *Eliot Spitzer, Attorney General*), for New York State Office of Temporary and Disability Assistance, appellant.

*Alan G. Krams* of counsel (*Leonard Koerner* and *Thomas C. Crane* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for Edward I. Koch, as Mayor of the City of New York and others, appellants.

*Richard Rothman* of counsel (*Geoffrey D. Berman* and *Bernadette McCann Ezring* on the brief; *Weil, Gotshal & Manges LLP,* attorneys), for American Association of Community Psychiatrists, amicus curiae.

*Steven M. Edwards* of counsel (*Hogan & Hartson L.L.P.*, attorneys), for Association of Service Providers for Homeless Adults, amicus curiae.

## OPINION OF THE COURT

BUCKLEY, P.J.

This appeal presents the following question: did a 1981 consent decree mandate that defendants provide shelter to everyone upon demand without determining financial need, without conditions and without a time limit? Since the clear and unambiguous language of the consent decree does not contain such a boundless and unprecedented entitlement, we reverse the IAS court and find that the regulation duly promulgated by New York State is consistent with the consent decree.

This action was commenced in 1979 as a challenge to the sufficiency and quality of shelter for homeless men in New York City. The parties entered into a consent decree in August 1981 which provided, inter alia, that

> "The City defendants shall provide shelter and board to each homeless man who applies for it provided that (a) the man meets the need standard

to qualify for the home relief program established in New York State; or (b) the man by reason of physical, mental or social dysfunction is in need of temporary shelter."

Since the entry of the consent decree, shelters have changed from huge armories in which hundreds of men slept on concrete floors to smaller facilities in which the residents are involved in therapeutic environments to develop the skills required for sobriety, personal responsibility and independent living. The protections embodied in the consent decree were also extended to homeless adult women (*Eldredge v Koch*, 98 AD2d 675 [1983]).

In 1995, the state agency responsible for supervising local administration of public assistance promulgated a new regulation establishing eligibility requirements and standards for the provision of temporary shelter and assistance (18 NYCRR 352.35). The regulation requires, inter alia: that applicants for temporary shelter cooperate with the agency's assessment of their needs and with the development of an independent living plan; and, that individuals actively seek other housing and not unreasonably refuse or fail to accept available housing. Applicants who fail to cooperate with a needs assessment may have their applications denied; recipients who fail to comply with the independent living plan are subject to a 30-day suspension of aid. Access to a shelter will not be denied or discontinued, however, for failure of an individual to comply with any requirement when such is due to the physical or mental impairment of the individual or a family member.

In December 1995, plaintiffs moved for an order declaring this eligibility and standards regulation invalid due to a perceived inconsistency with the consent decree, viz., that the decree obligated defendants to deem as eligible an individual, regardless of financial need, who suffered from a "social dysfunction," yet the regulation did not exempt such an individual from cooperation. Plaintiffs' essential position was aptly summarized in the affidavit of their counsel, Robert Hayes, who asserted that the decree "obligate[d] the defendants to provide shelter to men who needed it, without immediate analysis of why they needed it." Plaintiffs assert that defendants are without the power to require cooperation or other helpful conduct from those seeking admission to or residing in temporary shelters since the term "social dysfunction" is absent from the regulations and, in any event, is difficult to adequately define.

The IAS court agreed with this characterization of defendants' obligation to provide shelter. In uncovering such an unlimited entitlement to publicly funded shelter, the IAS court went beyond the clear, unambiguous text of the consent decree and created an obligation to provide shelter without regard to financial need, regardless of the conduct of any individual and without reference to any particular person's actual need for such aid.

A consent decree "is in the nature of a contract" and should be interpreted accordingly (*see 19th St. Assoc. v State of New York*, 79 NY2d 434, 442 [1992]). To properly gauge the legal obligations of the defendants and the legal responsibilities, if any, of the plaintiffs, we must start with the plain meaning and clear import of the consent decree. On its face, the consent decree only obligates the defendants to provide *temporary* shelter to *homeless* individuals who *either* qualify for public assistance *or* whose need for temporary shelter results from physical, mental or social dysfunction. The decree only covers individuals who demonstrate need. The decree does not state that homeless individuals who do not qualify for public assistance can rely on a "social dysfunction" as a basis for refusing to cooperate with reasonable requirements for resident cooperation. Contrary to plaintiffs' contentions, there is nothing in the decree that provides or even suggests that the defendants undertook to provide shelter unconditionally, indefinitely or regardless of need. The decree does not preclude the adoption of reasonable standards intended to assure that temporary shelter is provided only to those who actually need it.

On the contrary, defendants, as the public authorities to whose discretion the supervision and operation of these essential programs have been committed, are empowered to adopt regulations which "are rationally related to the agency's legitimate rulemaking objective of assuring that temporary housing resources are not squandered on those having no real need of them and to the related, equally legitimate objective of attempting to reduce prospective reliance upon temporary housing provided at public expense" (*McCain v Giuliani*, 252 AD2d 461, 462 [1998], *lv dismissed* 93 NY2d 848 [1999]).

To ascertain whether an individual has no currently available or potential shelter, defendants must be able to require cooperation. Unless temporary shelter is to become life-long housing, defendants must likewise be able to require cooperation. To disable defendants from requiring certain

conduct, including cooperation, would convert a temporary expedient into a permanent entitlement. To couple such a reading of the decree with the express exemption from establishing financial eligibility would convert defendants from providers of shelter-of-last-resort into housing guarantors for an indeterminate portion of the population.

As defendants argue, based on the clear language of the decree, defendants are obligated to supply a sufficient amount of decent shelter to meet demand. Defendants are not required to provide that homeless individuals who engage in disruptive behavior or refuse to take steps toward self-sufficiency may nonetheless remain in shelters in perpetuity.

The regulations properly exempt individuals who are unable to comply but sanction those unwilling (see also 18 NYCRR 351.26 [a] [3]). Plaintiffs have conflated categorical eligibility for temporary housing (need) with the conduct of one seeking temporary housing. An individual can refuse to enter temporary housing and can engage in conduct which allows defendants to refuse him entry. Defendants did not forfeit their ability to deny or sanction those who are unwilling to comply with reasonable requirements such as cooperation or good behavior.

The clear language of the decree comports with the relief sought in the complaint; consistency between relief sought and obtained is particularly relevant since it is to be expected that the decree will not give the plaintiffs more than they requested (see Navarro-Ayala v Hernandez-Colon, 951 F2d 1325, 1341 [1991]; Paralyzed Veterans of Am., Inc. v Washington Metro. Area Tr. Auth., 894 F2d 458, 461-462). Plaintiffs challenged the sufficiency and quality of shelter; defendants denied there was a constitutional or statutory right to temporary shelter. The consent decree acknowledges plaintiffs' right to temporary shelter and relieves them of the perceived burden of establishing public assistance eligibility to gain entry to temporary shelter. The decree only alluded to eligibility requirements without describing them. There is nothing in the language of the decree nor in the circumstances surrounding its formation to suggest that defendants would be precluded from establishing reasonable standards to ensure that homeless individuals would be required to take steps to achieve self-sufficiency and to reduce their reliance on temporary shelter.

Notably, it was settled law when the decree was entered that the State Constitution does not compel aid to be furnished to individuals who, though able, refuse to help themselves (Matter of Barie v Lavine, 40 NY2d 565, 570 [1976]). The IAS court

correctly observed that while the consent decree has no provision expressly allowing individuals to be disqualified for misconduct, defendants have done so, without objection from plaintiffs, since 1981. We see no meaningful distinction between requiring good conduct and requiring cooperation. To carry out the important duties imposed by our Constitution, statutes and regulations, as well as the evident mandates of the consent decree, defendants must be able to exercise sufficient discretion to allocate public resources to those individuals genuinely in need. We are unwilling to assume, as plaintiffs urge and the IAS court implicitly accepted, the proposition that defendants will deprive needy and dependent individuals, unable to control themselves, of temporary shelter.

Accordingly, the order of the Supreme Court, New York County (Stanley Sklar, J.), entered November 30, 2001, which declared 18 NYCRR 352.35 null and void as to single adult homeless persons subject to a consent decree entered in this action in August 1981, should be reversed, on the law, without costs, plaintiffs' motions denied and it is declared that 18 NYCRR 352.35 was duly promulgated and is consistent with the consent decree.

Motions seeking leave to file amicus curiae briefs granted.

ROSENBERGER, LERNER, FRIEDMAN and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered November 30, 2001, reversed, on the law, without costs, plaintiffs' motions denied and it is declared that 18 NYCRR 352.35 was duly promulgated and is consistent with the consent decree. Motions seeking leave to file amicus curiae briefs granted.