■ ROBERT CALLAHAN et al., Respondents, v HUGH L. CAREY et al., Defendants, and EDWARD I. KOCH et al., Appellants. LOUISE F. ELDREDGE et al., Respondents, v EDWARD I. KOCH et al., Appellants. [861 NYS2d 624]—

Order, Supreme Court, New York County (Stanley L. Sklar, J.), entered January 5, 2007, which granted plaintiffs' motion to continue prior interim orders requiring the City to furnish plaintiffs' counsel with copies of shelter termination sanction notices at the same time they are issued to residents of homeless shelters, reversed, on the law, without costs, and the motion denied.

In 1979, plaintiffs in the *Callahan* action, who were homeless,

single, adult men, brought this action "challenging the sufficiency and quality of shelter for homeless men in New York City." Pursuant to a final judgment by consent (the decree), dated August 26, 1981, the city defendants were to provide "shelter and board to each homeless man who applies for it provided that (a) the man meets the need standard to qualify for the home relief program established in New York State; or (b) the man by reason of physical, mental or social dysfunction is in need of temporary shelter."

Paragraph 10 of the decree requires that a twice-monthly report be issued by employees appointed by the Commissioner of the City's Human Resources Administration, "describing compliance or lack thereof with each provision of this decree." Paragraph 11 mandates that plaintiff's counsel "be provided access to any records relevant to the enforcement and monitoring of this decree." In the *Eldredge* action, the provisions of the decree were extended to homeless women (98 AD2d 675 [1983]).

In 1995, the New York State Department of Social Services promulgated a regulation (18 NYCRR 352.35) establishing eligibility requirements and standards for the provision of temporary shelter and assistance for homeless persons. Plaintiffs challenged this resolution as inconsistent with the decree. In 2003, we rejected that challenge (307 AD2d 150 [2003], *lv dismissed* 100 NY2d 615 [2003]), finding that the regulation properly exempted individuals who were *unable* to comply (*see* 18 NYCRR 351.26 [a]), and limited imposition of sanctions to those who were *unwilling* to do so.

Against this background, we reject plaintiffs' and the dissent's argument that paragraph 11 of the decree and our 2003 decision require that copies of shelter termination sanction notices be provided to plaintiffs' counsel at the same time such notices are given to shelter residents. The decree, in addressing the type of record to which the City must provide access, speaks about information regarding shelter applicants, and does so in the aggregate. It does not make any specific reference to data regarding current residents and makes no provision for information concerning particular individuals. Therefore, unlike the dissent, we do not read the decree requirement under paragraph 11 that the City provide the Legal Aid Society "access to any records relevant to the enforcement and monitoring of this decree" so broadly as to impose an obligation on the City to provide sanction notices to the Legal Aid Society when residents are noticed.

Under our 2003 decision, section 352.35 sanctions, even if erroneously imposed, would not violate the right to temporary

shelter. A shelter resident who faces the possibility of sanction for noncompliance with what this regulation describes as an "independent living plan" is not facing the loss of rights secured by the decree.

Paragraph 12 of the decree supports such an interpretation, listing five subjects that must be addressed in a daily "statement" from the City to plaintiffs' counsel. All of them involve information about shelter applicants, not current residents, and all involve aggregate data, not details about particular individuals. This information goes to the heart of the City's undertaking to place new entrants without imposing on them "the perceived burden of establishing public assistance eligibility to gain entry to temporary shelter" (307 AD2d at 154).

Likewise, we disagree with plaintiffs' and the dissent's view that reversal of the order on appeal risks leaving shelter residents helpless. Shelter residents, like recipients of public benefits for the indigent, receive an array of regulatory protections, including receipt of notices about available legal assistance. In addition, an individual receiving a sanction notice has the opportunity to authorize release of his or her entire case record to the Legal Aid Society or some other appropriate representative.

We have considered plaintiffs' remaining arguments and find them unavailing. Concur—Nardelli, J.P., Gonzalez and Sweeny, JJ.

McGuire, J., dissents in a memorandum as follows: The city defendants are required by paragraph 11 of the consent decree to provide plaintiffs' counsel with "access to any records relevant to the enforcement and monitoring of this decree." Under paragraph 1, the city defendants are required to "provide shelter and board to each homeless [person] who applies for it provided that (a) the [person] meets the need standard to qualify for the home relief program established in New York State; or (b) the [person] by reason of physical, mental or social dysfunction is in need of temporary shelter." In 2003, we rejected (307 AD2d 150 [2003], lv dismissed 100 NY2d 615 [2003]) a challenge under the decree to a regulation of the New York State Department of Social Services (18 NYCRR 352.35) establishing eligibility requirements and standards for the provision of temporary shelter and assistance for homeless persons. In doing so, we held that "[t]he [various applicable] regulations properly exempt individuals who are unable to comply but sanction those unwilling" to comply with the requirements and standards (307 AD2d at 154). The question presented on this appeal is whether the

shelter termination sanction notices are records that are "relevant to the enforcement and monitoring of th[e] decree."*

That question is not an empirical one concerning the good faith of the city defendants in complying with the decree. Rather, it is a question of law concerning the scope of the obligation to provide plaintiffs' counsel with "any records relevant to the enforcement and monitoring of th[e] decree." This language of paragraph 11 defines a broad class of records. The city defendants must provide access to *"any* records" provided only that they are *"relevant* to the enforcement and monitoring of th[e] decree" (emphasis added). Thus, a record need not be "essential," "necessary" or even "directly related" to the enforcement and monitoring of the decree.

In my opinion, the sanction notices are "relevant to the enforcement and monitoring of th[e] decree." Obviously, compliance by the city defendants with the requirements imposed by the decree for entry into a homeless shelter through the front door would be undermined if and to the extent homeless individuals improperly or erroneously were escorted out the back door. In other words, the city defendants would not satisfy their obligation to "provide shelter" if they were to provide it on day one and wrongfully take it away on day two. I do not mean to suggest that the record provides any reason to suppose that the city defendants are seeking to evade the obligations of the decree. To the contrary, as Supreme Court stated in its written decision, "the City has taken many commendable steps to try to ensure that no one who is entitled to shelter is wrongly deprived of it." I do maintain, however, that the logical possibility that obligations under the decree could be evaded through

---

* The city defendants do not contend that the obligation imposed by the order of Supreme Court—i.e., to provide plaintiffs' counsel with copies of any shelter termination sanction notices at the time they are issued to individuals receiving shelter pursuant to the decree—is broader than the one contemplated by the provision of paragraph 11 requiring the city defendants to provide "access" to relevant records. Rather the city defendants argue only that the notices are not "relevant to the enforcement and monitoring of this decree." Accordingly, the city defendants implicitly concede that if the notices are relevant, requiring that they be provided to the Legal Aid Society simultaneously with providing them to the residents is consistent with the "access" requirement of the decree. Nonetheless, the majority writes that I "read the decree requirement under paragraph 11 that the City provide the Legal Aid Society 'access to any records relevant to the enforcement and monitoring of this decree' *so broadly* as to impose an obligation on the City to provide sanction notices to the Legal Aid Society *when residents are noticed*" (emphasis added). To reiterate, I take no position with respect to the issue of *when* the sanction notices should be provided. Rather, I do no more than recognize that the city defendants do not contest this issue.

improper terminations is a sufficient reason to conclude that the sanction notices are "relevant to the enforcement and the monitoring of th[e] decree." Moreover, as Supreme Court immediately went on to state, "human error is inevitable." The majority is correct that shelter residents "receive an array of regulatory protections." But these protections are extrinsic to the decree and thus do not affect the issue of contract interpretation—i.e., the scope of the City's obligation to provide plaintiffs' counsel with "any records relevant to the enforcement and monitoring of th[e] decree"—that is at the core of this appeal.

In our prior decision we concluded that the challenged regulation is consistent with the decree; we did not conclude that all applications of the regulation would be consistent with the decree. A person who has a right to shelter under the decree "by reason of physical, mental or social dysfunction" would be denied that right if she were terminated after an erroneous determination that she was unwilling rather than unable to abide by a requirement of the regulation, regardless of the good faith of the erroneous decision-maker.

Accordingly, the sanction notices are "relevant to the enforcement and monitoring of th[e] decree," and I respectfully dissent. [*See* 13 Misc 3d 1241(A), 2006 NY Slip Op 52203(U).]