[989 NE2d 1, 966 NYS2d 739]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRANCE MONK, Appellant.

Argued March 21, 2013; decided April 30, 2013

**POINTS OF COUNSEL**

*Scott B. Tulman & Associates, PLLC*, New York City (*Scott B. Tulman* of counsel), for appellant. I. The trial court's failure to advise appellant during the guilty plea allocution of the maximum permissible term of incarceration he faced as the result of postrelease supervision requires reversal of his conviction because this potential effect of postrelease supervision is a direct penal consequence of the guilty plea and appellant timely moved to withdraw his guilty plea on that ground. (*People v Lynn*, 28 NY2d 196; *People v Nixon*, 21 NY2d 338; *Boykin v Alabama*, 395 US 238; *People v Harris*, 61 NY2d 9; *People v Ford*, 86 NY2d 397; *Cuthrell v Director, Patuxent Inst.*, 475 F2d 1364; *People v Harnett*, 16 NY3d 200; *People v Weekes*, 28 AD3d 499; *People v Pearson*, 55 AD3d 314; *People v Achaibar*, 49 AD3d 389.) II. The trial court should have granted appellant's timely motion to withdraw his guilty plea premised on appellant's claimed lack of understanding as to the postrelease supervision component of his sentence or, at a minimum, afforded him a meaningful opportunity to be heard. (*People v Nixon*, 21 NY2d 338; *People v Gravino*, 14 NY3d 546; *People v Harnett*, 16 NY3d 200; *Foucha v Louisiana*, 504 US 71; *People v Latham*, 90 NY2d 795; *People v Louree*, 8 NY3d 541; *People v Van Deusen*, 7 NY3d 744; *People v Catu*, 4 NY3d 242; *People v Mattison*, 67 NY2d 462.)

*Janet DiFiore, District Attorney*, White Plains (*Laurie Sapakoff, Steven Bender* and *Richard Longworth Hecht* of counsel), for respondent. I. Defendant's negotiated guilty plea was not rendered involuntary because the court failed to advise him of the collateral consequences that *might* result from violating the conditions of postrelease supervision. (*People v Ramos*, 63 NY2d 640; *People v Catu*, 4 NY3d 242; *People v Gravino*, 14 NY3d 546;

*People v Harnett*, 16 NY3d 200; *People v Ford*, 86 NY2d 397; *People v Harris*, 61 NY2d 9; *Boykin v Alabama*, 395 US 238; *People v Boyd*, 12 NY3d 390.) II. The possibility of further incarceration as a result of violating the conditions of post-release supervision is a "collateral" rather than a "direct" consequence. (*People v Laster*, 38 AD3d 242, 9 NY3d 846; *People v Behlin*, 33 AD3d 390, 8 NY3d 843; *People v Muriqi*, 9 AD3d 743, 3 NY3d 679; *People v Catu*, 4 NY3d 242; *People v Ford*, 86 NY2d 397; *People v Gravino*, 14 NY3d 546; *People v McAlpin*, 17 NY3d 936.) III. Failing to explain to a pleading defendant that further incarceration may result from a violation of postrelease supervision does not render a plea involuntary. (*People v Gravino*, 14 NY3d 546; *People v Harnett*, 16 NY3d 200; *People v Stewart*, 16 NY3d 839; *People v Louree*, 8 NY3d 541; *People v Nixon*, 21 NY2d 338; *People v Hill*, 9 NY3d 189; *United States v Andrades*, 169 F3d 131.)

## OPINION OF THE COURT

READ, J.

By indictment filed in Westchester County on June 17, 2004, defendant Terrance Monk was charged with first-degree robbery (Penal Law § 160.15 [3] [the robber "(u)ses or threatens the immediate use of a dangerous instrument"]), second-degree robbery (two counts) (Penal Law § 160.10), and second- and third-degree assault (Penal Law §§ 120.05, 120.00, respectively) in connection with an attack on a woman whom defendant and at least one accomplice were alleged to have followed into the driveway of her residence in Westchester County in the late evening hours of March 21, 2004. As the victim recounted what happened, defendant smashed the passenger side window of her car with a Belgian block thrown with such force that she suffered a broken rib and a bruised right arm; reached through the shattered glass and punched her in the back; and threatened to kill her if she did not get out of the car and go into her home, and to cut off her finger with a knife that he wielded if she refused to give him her ring. Defendant was accused of stealing the victim's purse, cell phone, car keys, and ring before fleeing with an accomplice, leaving her cowering inside her car.

During plea negotiations, the assistant district attorney, at defense counsel's behest, approached her counterparts in Rockland County to seek agreement that the 10-year sentence then under discussion would run concurrently with whatever sentence was imposed on defendant to resolve charges pending against him for thefts in Rockland County, to which he

anticipated soon pleading guilty. At a hearing on April 15, 2005, the assistant district attorney informed County Court that after "several phone calls to try and accommodate the defendant and his attorney on that," she had secured the Rockland County district attorney's commitment not to oppose concurrent sentencing. Defendant then agreed to plead guilty to attempted first-degree robbery (Penal Law §§ 110.00, 160.15 [3]), a class C violent felony, in full satisfaction of the indictment in Westchester County.

The judge put the sentence promise on the record before accepting defendant's plea, advising him that the "[s]entence promise is a ten-year determina[te] sentence[,] concurrent with the sentence you're going to receive in Rockland County[,] with a mandatory five-year post-release supervision period." During the plea allocution, defendant acknowledged that on April 24, 1997, he had pleaded guilty to second-degree burglary (Penal Law § 140.25), a class C violent felony, for which he was sentenced to an indeterminate term of 3 to 6 years in prison, and, as a result, would be sentenced as a second violent felony offender; and that his guilty plea stood on its own, independent of any other conviction, including the disposition of the Rockland County case.

At a court appearance on May 10, 2005, defense counsel (who was, in fact, defendant's second attorney, The Legal Aid Society having previously successfully asked to be relieved), sought to be excused from representing defendant on the ground of irreconcilable differences. Additionally, she informed the judge that defendant, although not then speaking to her, had earlier "communicated a desire . . . to withdraw his plea." County Court granted the attorney's application, and subsequently appointed new defense counsel.

By motion dated June 24, 2005, defendant, through his new attorney, moved to withdraw his guilty plea, alleging multiple grounds for doing so. As relevant to this appeal, he claimed that the sentence promise was deficient because the judge "did not explain to [him] at the time of the plea that a violation of the post release supervision could result in his being incarcerated for up to five additional years of imprisonment, over and above the ten years promised by the Court."

In a decision and order dated August 17, 2005, County Court denied the motion. The judge noted that defendant "was informed that he was subject to a period of [five] years of post

release supervision." Further, because the "consequences of . . . *violation* of post release supervision are collateral to a defendant's plea," he was not required to describe them. At the sentencing proceeding that same day, defendant, who refused to answer the judge's questions regarding his 1997 conviction, was adjudicated a second violent felony offender. County Court then sentenced him as agreed to, absent the "benefit of a promised concurrent sentence" since there was no plea agreement in Rockland County.*

In an opinion and order dated March 15, 2011, the Appellate Division affirmed (83 AD3d 35 [2d Dept 2011]). The court commented that while neither this Court nor the Second Department had "yet addressed whether the consequences of violating the conditions of postrelease supervision must be expressly disclosed to defendants during in-court allocutions and before the judicial acceptance of guilty pleas," the First and Third Departments had weighed in on the issue in cases where the claim was unpreserved, and "both Courts concluded [that] the consequences of violating the conditions of postrelease supervision are merely collateral, and that a court's failure to allocute as to those consequences does not render pleas unknowing, involuntary, or unintelligent" (*id.* at 38, citing *People v Laster*, 38 AD3d 242, 243 [1st Dept 2007], *lv denied* 9 NY3d 846 [2007] [declining to review the defendant's unpreserved claim that the court misinformed him as to the precise consequences of a violation of a condition of postrelease supervision, but noting that "(w)ere we to review this claim, we would reject it"]; *People v Behlin*, 33 AD3d 390, 390 [1st Dept 2006], *lv denied* 8 NY3d 843 [2007] ["reincarceration for violating the terms of postrelease supervision is a collateral consequence of the plea"]; *People v Muriqi*, 9 AD3d 743, 744 [3d Dept 2004], *lv denied* 3 NY3d 679 [2004] ["County Court was not required to inform defendant of the consequences of not complying with the conditions of postrelease supervision, which conditions are set by the Board of Parole, as those were collateral consequences of his plea" (citation omitted)]).

---

* Plea negotiations in Rockland County fell apart some time after defendant pleaded guilty in Westchester County, and he went to trial on the Rockland County indictment. The jury in Rockland County convicted defendant of first- and second-degree robbery (Penal Law §§ 160.15, 160.10, respectively), and first-degree burglary (Penal Law § 140.30). On November 15, 2005, defendant was sentenced for these crimes to an aggregate term of 17 years in prison, to be followed by five years of postrelease supervision (*see People v Monk*, 50 AD3d 925 [2d Dept 2008], *lv denied* 11 NY3d 791 [2008]).

The Second Department then agreed with the First and Third Departments that

> "while a trial court must advise a defendant of the postrelease supervision component of a determinate sentence prior to the acceptance of a guilty plea, it need not allocute on the ramifications of violating the conditions of postrelease supervision, as those ramifications . . . are subject to the discretion of the Board of Parole, rendering them, by nature, merely collateral to pleas and sentences" (83 AD3d at 38-39).

A Judge of this Court granted defendant leave to appeal (17 NY3d 819 [2011]), and we now affirm.

We have repeatedly held that a trial court "must advise a defendant of the direct consequences of [a] plea," but "has no obligation to explain to defendants who plead guilty the possibility that collateral consequences may attach to their criminal convictions" (*People v Catu*, 4 NY3d 242, 244 [2005], citing *People v Ford*, 86 NY2d 397, 403 [1995]; *see also People v Gravino*, 14 NY3d 546, 553-554 [2010]). We have defined a direct consequence of a plea as "one which has a definite, immediate and largely automatic effect on defendant's punishment" (*Ford*, 86 NY2d at 403). Put another way, direct consequences consist of "the core components of a defendant's sentence: a term of probation or imprisonment, a term of postrelease supervision, a fine" (*People v Harnett*, 16 NY3d 200, 205 [2011]). By contrast, collateral consequences are "peculiar to the individual and generally result from the actions taken by agencies the court does not control" (*Ford*, 86 NY2d at 403).

First, the consequences of violating postrelease supervision are uncertain at the time of the plea, depending, as they do, upon how a defendant acts in relation to a condition tailored to his circumstances and imposed in the future. Thus, such consequences are properly described as "peculiar" to the individual. Second, the New York State Board of Parole—not the courts—is responsible for establishing the conditions of a defendant's postrelease supervision (*see* Penal Law § 70.45 [3]; Executive Law §§ 259-c [2]; 259-i [3], [4]). Further, the Board decides whether or not a defendant has violated a condition of postrelease supervision, and, in the event a violation is determined to have occurred, the proper remedy. The Board's options include simply restoring the defendant to supervision; placement in a parole

transition facility for up to 180 days before restoring supervision; or reincarceration for some period of time, but no longer than the balance of the period of postrelease supervision to which the defendant was originally sentenced (*see id.* § 259-i [3] [f] [x]).

In sum, the ramifications of a defendant's violation of the conditions of postrelease supervision are classic collateral consequences of a criminal conviction—i.e., they are "peculiar to the individual" and the product of "actions taken by agencies the court does not control" (*see Ford*, 86 NY2d at 403). These consequences are speculative at the time of the guilty plea, not "definite, immediate and largely automatic" (*id.*); they are not a "core component[ ]" of the sentence imposed on the defendant by the judge to fulfill the bargain struck by the parties (*see Harnett*, 16 NY3d at 205).

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting). The majority concludes that the possible reincarceration of defendant as a result of a violation of the conditions of postrelease supervision is "not a 'core component[ ]' of the sentence imposed on the defendant by the judge to fulfill the bargain struck by the parties" (majority op at 33 [citation omitted]), and therefore the trial court is under no obligation to notify defendant of such possible reincarceration. I believe the potential extent of imprisonment under the agreed-upon plea is central to the sentence, and I respectfully dissent.

It is well established that a "trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences" (*People v Ford*, 86 NY2d 397, 402-403 [1995], citing *People v Harris*, 61 NY2d 9, 19 [1983]). Indeed, " 'due process requires that the record must be clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant' " (*People v Catu*, 4 NY3d 242, 245 [2005], quoting *Ford*, 86 NY2d at 403).

A prison sentence encompasses both incarceration and postrelease supervision (*see Catu*, 4 NY3d at 244; L 1998, ch 1 [Jenna's Law]). Given the obvious implication and common understanding of the term "postrelease," in order for a defendant to appreciate, in the constitutional sense, the nature of the components of the sentence, the defendant should be advised

that there is a potential for reincarceration. Certainly how much time a defendant will spend in prison, with the attendant loss of freedom, is exactly the type of information essential to defendant's " 'voluntary and intelligent choice among the alternative courses of action open to the defendant' " (*see Catu*, 4 NY3d at 245, quoting *Ford*, 86 NY2d at 403).

The constitutional duty to ensure that a defendant has a full understanding of what his or her plea connotes is of particular importance, given the central role of the plea bargaining process in criminal courts. It is an undeniable reality of our current criminal justice system that the majority of defendants will be sentenced in accordance with a negotiated plea (*see e.g. Missouri v Frye*, 566 US —, —, 132 S Ct 1399, 1407 [2012] ["Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas"], citing Department of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, Table 5.22.2009, available at http://www.albany.edu/sourcebook/pdf/t5222009.pdf; Department of Justice, Bureau of Justice Statistics, *Felony Sentences in State Courts, 2006—Statistical Tables*, available at http://bjs.ojp.usdoj.gov/content/pub/pdf/fssc06st.pdf). As a result, the plea bargaining process is critical to the administration of justice (*see Frye*, 566 US at —, 132 S Ct at 1407 ["In today's criminal justice system . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant"]). Within our plea-based system of justice, defendants are overwhelmingly concerned with "whether he [or she] will be imprisoned and for how long" (*People v Gravino*, 14 NY3d 546, 559 [2010]).

Defendant, now a second violent felony offender, was subject to mandatory incarceration (*see* Penal Law § 70.04) with a five-year mandatory period of postrelease supervision (*see* Jenna's Law). In order to fully understand the consequences of his plea, and thus waive his right to trial, defendant should have been informed that he may be incarcerated more time than suggested by that part of the sentence mandating postrelease supervision (*see Catu*, 4 NY3d at 245, quoting *Ford*, 86 NY2d at 403; *see also People v Harnett*, 16 NY3d 200, 209 [2011, Ciparick, J., dissenting] ["(A) defendant cannot be said to knowingly and voluntarily forgo his right to trial if he does not know the full extent of confinement that might result from his conviction"]).

This Court held in *Catu* that in order to meet its constitutional duty a trial court "must advise a defendant of the direct

consequences of the plea" (*Catu*, 4 NY3d at 244, quoting *Ford*, 86 NY2d at 402-403). As we stated in *People v Harnett* (16 NY3d at 205), the "direct consequences of a plea" "are essentially the core components of a defendant's sentence," which include a term of imprisonment and a term of postrelease supervision. Here, the majority concludes that the consequences of a violation of postrelease supervision are merely collateral, as they are peculiar to the defendant, and outside the control of the court. Thus, the trial court's duty ends once the defendant is informed that he or she will be confined for a period of time, then placed under postrelease supervision. I disagree because I believe that the extent of imprisonment is of singular importance to a defendant's understanding of the plea, and thus is not merely collateral, but a core component of sentencing.

A trial court is not obligated to explore every possible consequence of a plea with a defendant, and there is no specific or required language for allocuting a defendant (*see Catu*, 4 NY3d at 245). However, a trial court complies with constitutional requirements when it ensures that a defendant understands that there is a possibility of future incarceration even after he or she has been released to postrelease supervision.

I believe that defendant should be informed that the statutory allocation between incarceration and postrelease supervision may change in a direction adverse to defendant. I respectfully dissent.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH and PIGOTT concur with Judge READ; Judge RIVERA dissents in an opinion.

Order affirmed.