# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 67  SSM 10
The People &c.,
          Respondent,
     v.
Amin Laboriel,
          Appellant.

Submitted by Lisa Napoli, for appellant.
Submitted by Eric C. Washer, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

Defendant's challenge to the validity of his plea is not properly raised on this appeal

from an Appellate Division order affirming a sentence, pursuant to 22 NYCRR § 670.11

- 1 -

(b) (see CPL 450.30 [1]; 470.35 [1]; People v Pagan, 19 NY3d 368, 370-371 [2012]). Defendant's sentence—an authorized prison term with post-release supervision—is not illegal, and any excessive sentence claim is beyond the scope of this Court's review (see People v Veale, 78 NY2d 1022, 1023-1024 [1991]). The many dissenting opinions cited by the dissent provide no support for a different result (see dissenting op at 6, 8-11).

RIVERA, J. (dissenting):

Defendant and the prosecutor negotiated a plea deal with a definite sentence. Defendant pleaded guilty and the court imposed the sentence in accordance with the plea. The same scenario plays out hundreds of times every day in our courts. Defendant served

- 1 -

the entire carceral period of that sentence. When it came time to release him into the community under supervision, the government failed to uphold its promise and instead continued to confine him. That should end the analysis here, as the denial of liberty beyond a lawfully imposed sentence cannot stand.

The District Attorney claims that because defendant has been released under supervision, he has no recourse against the government, and that, in any event, the prosecution bears no fault, and thus no responsibility, for any extra time defendant was confined, as defendant's situation is a result of circumstances beyond the control of the courts. Defendant claims that the government's promised sentence has gone unfulfilled and that the terms of the agreement were unilaterally changed to his detriment when he was confined beyond his release date. I agree with defendant that, because he was involuntarily denied his liberty beyond the carceral period agreed to by the parties and imposed by the court, his sentence is unlawful. Although he has been released, defendant is due, and may obtain, relief that approximates the agreed-upon sentence. Therefore, I would reverse.

On March 6, 2019, pursuant to a plea agreement with the prosecution, Supreme Court, Queens County, sentenced defendant Amin Laboriel to a term of three years' incarceration and five years' postrelease supervision (PRS). Defendant was eligible for conditional release from incarceration on January 26, 2020.[1] Based on the offense for which he was convicted, defendant was subject to the Sexual Assault Reform Act (SARA),

---

[1] The record indicates that defendant was detained prior to sentencing for an unspecified period, and defendant contends that his maximum expiration date was calculated based on his good-time credit. The prosecution does not contest that January 26, 2020, was defendant's maximum expiration date.

and thus, before his anticipated release date, defendant provided the New York State Department of Corrections and Community Supervision (DOCCS) with a proposed home address in New York City. DOCCS determined the address did not comply with the SARA school grounds provision, which DOCCS and this Court have interpreted as "prohibit[ing]" specified individuals "from residing within 1,000 feet of school grounds" (*People ex rel. McCurdy v Warden, Westchester County Corr. Facility*, 36 NY3d 251, 254 [2020], citing Executive Law § 259-c [14] and Penal Law § 220.00 [14]).[2] Thus, DOCCS detained defendant in prison until his maximum expiration date of July 2, 2020, and thereafter transferred defendant to the "residential treatment facility" (RTF) housed in Fishkill Correctional Facility, a medium security prison. Defendant was held in the Fishkill RTF until April 2, 2021—nine months after he should have been released from prison to serve his term of PRS in his community.

During his confinement at the Fishkill RTF, defendant appealed and moved for expedited review of his sentence pursuant to the Rules of the Appellate Division, Second Department (22 NYCRR) § 670.11 (b), arguing that his continued detention in a prison "rendered his sentence more onerous than what he was promised, meaning the plea was not knowing, intelligent, and voluntary." Contending that he had not obtained the benefit of his bargain with the prosecution as a result of DOCCS' erroneous interpretation of

---

[2] The prosecution contends that defendant submitted two non-compliant addresses, while defendant avers that he proposed a single Bronx address which was not within 1,000 feet of a school, but rather within 1,000 feet of nonpublicly accessible home daycare programs.

SARA's school grounds provision, defendant requested that the Appellate Division either reduce his prison sentence or his PRS term.

While his appeal was pending before the Appellate Division, defendant filed a petition for writ of habeas corpus, alleging, as relevant here, that his continued detention at the Fishkill RTF violated his right to substantive due process and that the SARA school grounds provision was unconstitutionally vague (*see* NY St Cts Elec Filing [NYSCEF] Doc No. 3, defendant's memorandum of law, in *People ex rel. Napoli v Annucci*, Sup Ct, Dutchess County, index No. 2020/53903). Specifically, defendant argued that he had a substantive due process right to assistance in finding SARA-compliant housing or in being released to the New York City shelter system, that the Fishkill RTF is in actuality a prison, and that DOCCS lacked statutory authority to retain him (*see id.*). The court denied the writ, concluding that defendant was not "entitled to immediate release" because "he had not identified SARA-compliant housing," and therefore "at most[,] he would be entitled to a transfer to a different residential treatment facility" (NYSCEF Doc No. 56, decision, order & judgment, in *People ex rel. Napoli*, citing *People ex rel. Lucien v Superintendent, Fishkill Corr. Facility, N.Y.S. DOCCS*, 190 AD3d 863 [2d Dept 2021]). The court also held that DOCCS was required to hold defendant in an RTF for six months after his carceral sentence ended because he had been unable to identify SARA-compliant housing, and that thereafter, DOCS was authorized to hold defendant "until such time that he locates SARA-compliant housing" (*id.* at 5-6, citing *McCurdy*, 36 NY3d 251).

The Appellate Division initially affirmed defendant's sentence, holding in full that "[t]he sentence imposed was not excessive" (191 AD3d 802, 802 [2d Dept 2021], citing

*People v Suitte*, 90 AD2d 80 [1982]). Defendant moved for reargument, and the

prosecution did not oppose. Thereafter, the Appellate Division granted defendant's motion

for reargument, recalled and vacated its prior decision, and again affirmed, holding in full:

> "The sentence imposed was not illegal (*see People ex rel.
> Johnson v Superintendent, Adirondack Corr. Facility*, 36
> NY3d 187 [2020]; *People ex rel. McCurdy v Warden,
> Westchester County Corr. Facility*, 36 NY3d 251 [2020]) or
> excessive (*see People v Suitte*, 90 AD2d 80 [1982]). To the
> extent that the defendant challenges the validity of his plea of
> guilty, this contention is improperly raised on this excessive
> sentence appeal (*see* 22 NYCRR 670.11 [b])" (195 AD3d
> 1042, 1043 [2d Dept 2021]).

A Judge of this Court granted leave to appeal (37 NY3d 1147 [2021]).[3]

It is now judicial dogma that a plea is intended to be the end of a defendant's

criminal prosecution (*see e.g. Santobello v New York*, 404 US 257, 261 [1971] [noting that

plea bargaining "leads to prompt and largely final disposition of most criminal cases"];

*People v Seaberg*, 74 NY2d 1, 7 [1989] [explaining that plea bargaining "provides a means

where, by mutual concessions, the parties may obtain a prompt resolution of criminal

proceedings with all the benefits that enure from final disposition"]; *People v Frederick*,

45 NY2d 520, 525 [1978] [explaining that "the need for finality which must be accorded

dispositions by guilty plea" is dispositive in "secur(ing) th(e) acknowledged benefits" of

plea bargaining]; *People v Selikoff*, 35 NY2d 227, 233 [1974] ["The negotiation process

which results in a guilty plea telescopes the judicial process and the necessarily protracted

---

[3] The majority, by reaching the merits, has implicitly invoked the exception to the mootness doctrine (*see Matter of Gonzalez v Annucci*, 32 NY3d 461, 470-471 [2018]; *Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715 [1980]). I agree that the exception applies here.

intervals involved in charges, trial, and sentence, and even appeals, hopefully starting the offender on the road to possible rehabilitation"]). That would have been the case here, but once DOCCS extended defendant's confinement beyond his maximum release date, defendant appealed, challenging the unlawful detainment and the government's unfulfilled sentencing promise.[4]

As I have previously noted, a plea is a negotiated bargain—the defendant admits guilt in exchange for the government's promise of a particular sentence (*see People v Bush*, — NY3d —, —, 2022 NY Slip Op 01956, *4-5 [2022, Rivera, J., dissenting]). The time to be served behind bars—the period of lost freedom—is generally the most significant part of the deal (*see People v Gravino*, 14 NY3d 546, 559 [2010] ["(I)n the vast majority of plea bargains the overwhelming consideration for the defendant is whether (they) will be imprisoned and for how long"]). This entire system of negotiated arrangements cannot survive unless the government adheres to its sentencing promise (*see Bush*, — NY3d at —, 2022 NY Slip Op 01956, *5 [Rivera, J., dissenting]; *People v McConnell*, 49 NY2d 340, 349 [1980]; *see also Missouri v Frye*, 566 US 134, 143-144 [2012]; *People v Monk*, 21 NY3d 27, 34 [2013, Rivera, J., dissenting]).

Defendant here pleaded guilty based on a promise of three years' incarceration and five years' PRS. It is undisputed that he served the carceral period of his sentence and that when the time came for his release, he was held for an additional nine months. Contrary to

---

[4] For the reasons I discuss (*infra*), I conclude that the sentence is illegal and therefore I have no occasion to consider defendant's claim that his plea was unknowing, unintelligent, and involuntary.

the majority's view (*see* majority mem at 2), once he was held in an RTF beyond the maximum expiration date of his incarceration, the sentence he was forced to serve was illegal. Defendant knowingly, voluntarily, and intelligently entered into a plea and abided by its terms as related to the carceral portion; thus, the failure to release him as promised by the prosecution—its side of the bargain—is a defect in the sentence. The fact that the government breached its agreement should mean that defendant may seek relief for that breach and demand that the promise be honored (*see e.g. Santobello*, 404 US at 263; *Selikoff*, 35 NY2d at 241). At the time of his confinement, that relief could have taken the form of specific performance by judicial order commanding his release to the community, subject to five years' PRS. That did not occur, but, contrary to respondent's arguments, that does not leave defendant without a remedy for the government's breach of the plea agreement and the unlawful sentence served. Although defendant cannot get back the time lost during his confinement—his liberty was deprived and cannot be regained—action can be taken to mitigate some of the harm incurred due to the breach of the sentencing promise. As defendant maintains, he could be resentenced so that the maximum expiration date of his release matches the conditional release date of the plea agreement sentence. This would allow defendant to accumulate good time credits that would potentially reduce the PRS period (*see* Penal Law § 70.40 [4] [a]-[c], as added by L 2021, ch 427, § 2; William C.

Donnino, Supp Practice Commentaries, McKinney's Cons Laws of NY, Penal Law § 70.40).[5]

This Court's decisions in *Johnson* and *McCurdy*, which I continue to maintain were wrongly decided, do not control here and certainly do not compel affirmance of the decision below (*see People ex rel. Johnson v Superintendent, Adirondack Corr. Facility*, 36 NY3d 187, 207 [2020, Rivera, J., dissenting], *cert denied sub nom. Ortiz v Breslin*, 595 US —, 142 S Ct 914 [2022]; *People ex rel. McCurdy v Warden, Westchester County Corr. Facility*, 36 NY3d 251, 265 [2020, Fahey, J., dissenting, joined by Rivera, J. & Wilson, J.]). First, those appeals did not squarely present the issue raised here. *Johnson* involved substantive constitutional challenges to detention in an RTF of an individual past his eligible release date until he secured a DOCCS-approved, SARA-compliant residence (*see* 36 NY3d at 193-195). A majority of the Court held that "the temporary confinement of sex offenders in correctional facilities, while on a waiting list for SARA-compliant [New York City Department of Homeless Services] housing, is rationally related to a conceivable, legitimate government purpose of keeping level three sex offenders more than 1,000 feet away from schools" (*id.* at 203). *McCurdy* involved a statutory challenge under Penal Law § 70.45 (3) and Correction Law § 73 (10) to relator's detention in an RTF after he should have been released on PRS (*see* 36 NY3d at 255-256). The majority held (in the statutory framework's euphemistic terms) that:

---

[5] A defendant might prefer to withdraw their plea, but that does not foreclose other relief, such as a resentencing that achieves meaningful compliance with the government's promise.

"Correction Law § 73 (10) authorizes DOCCS to provide temporary housing in an RTF to sex offenders subject to the mandatory condition set forth in the Sexual Assault Reform Act (SARA) (see Executive Law § 259-c [14]) after the six-month period specified in Penal Law § 70.45 (3) has expired but before the offender on PRS has located compliant housing" (*id.* at 254).

Unlike the defendants in those appeals, defendant here claims that the carceral portion of the sentence he was actually forced to serve was greater than what the parties agreed to and that this unfulfilled promise renders the sentence illegal. Defendant seeks to hold the government to its end of that bargain.

A second reason why we are not bound by those appeals to a particular outcome here is because defendant and the prosecution entered their agreement almost two years before *Johnson* and *McCurdy* were decided and those decisions were public almost six months after defendant reached his maximum expiration date. Thus, the only legal carceral portion of the sentence to which the parties could have agreed and which defendant accepted was three years, not three years plus whatever additional time DOCCS erroneously required. Indeed, according to respondent's logic, defendant could have been held at the RTF during his entire PRS period, meaning he would have served eight, not three years, under DOCCS confinement, thus exceeding the maximum seven-year prison sentence allowable under the law for the crime he pleaded guilty to (*see* Penal Law §§ 70.00 [2] [d], 70.02 [3] [c], 70.80 [4] [a] [iii]; *McCurdy*, 36 NY3d at 265 [Fahey, J., dissenting]).

I agree with defendant that the government should be held to its promises (*see Frye*, 566 US at 143-144; *Bush*, — NY3d at —, 2022 NY Slip Op 01956, *5 [Rivera, J.,

dissenting]; *Monk*, 21 NY3d at 34 [Rivera, J., dissenting]; *McConnell*, 49 NY2d at 349).

When the government fails to keep its promises to a defendant by continuing to deny that defendant's liberty beyond their agreed-upon release date, the defendant has established that their sentence is unlawful and that they are entitled to relief for that breach.

But why is it that the government cannot keep its sentencing promise to defendant? It claims the reason for the detention is the shortage of SARA-compliant housing in New York City, a problem beyond its control, and thus, it has no choice but to hold defendant until DOCCS is certain that defendant can comply with SARA's residency requirements. On its face, that explanation seems rational. But, as members of this Court have previously explained, even a cursory review of the events that got us to this point makes clear that the difficulty complained of by the government is partially of its own making. It is true that "[l]ocating SARA-compliant housing in New York City is virtually impossible" (36 NY3d at 234 [Wilson, J., dissenting]). However, DOCCS has erected significant barriers to finding compliant housing, forcing inmates to play "an unwinnable game of real-estate Battleship" (*id.* at 235 [Wilson, J., dissenting], citing *Matter of Gonzalez v Annucci*, 32 NY3d 461, 476 [2018, Wilson, J., dissenting]). Moreover, as relevant here, DOCCS has exacerbated SARA's harsh consequences by interpreting its residency requirement to apply to New York City homeless shelters (*see McCurdy*, 36 NY3d at 268 [Fahey, J., dissenting]; *Johnson*, 36 NY3d at 236 [Wilson, J., dissenting]). DOCCS and the City have also asserted that the City shelter system "is capable of receiving only 10 new sex offenders [subject to SARA] each month" (*Johnson*, 36 NY3d at 237-238 [Wilson, J., dissenting]), notwithstanding that the City is obligated to provide shelter to any person who requests it

(*see id.* at 225-226 [Rivera, J., dissenting]; *Callahan v Carey*, 12 NY3d 496 [2009]). Notably, defendant's counsel alleges, based upon the office's experience defending indigent New Yorkers, that the 10 person limit is artificial because DOCCS and the City have entered into an agreement to release only a handful of inmates subject to SARA to New York City shelters per month. Thus, as defendant points out, DOCCS could have released him to the New York City shelter system but simply chose not to. As United States Supreme Court Justice Sotomayor has explained, "New York has chosen to imprison people who cannot afford compliant housing past both their conditional release date and the expiration of their maximum sentences," despite recognition by law enforcement and legal scholars that residency restrictions neither reduce recidivism nor protect the community (*Ortiz*, — US —, —, 142 S Ct 914, 915-916 [Sotomayor, J., statement respecting denial of cert]). DOCCS' administrative accommodation with New York City, adopted for expediency, cannot trump defendant's right to hold the government to its sentencing promise to ensure that the sentence he serves is lawful.

The District Attorney's arguments here would have us go another step beyond *Johnson* and *McCurdy* to hold that the government may enter into an agreement, and when the moment comes to uphold its end of the bargain, renege because a side deal with New York City takes priority over its promise to defendant. That is one step too far and undermines confidence in negotiated sentences. If defendant had breached his part of the bargain we would, correctly, hold him accountable. The same legal rule that binds defendants has been equally applied to the government, until now. I dissent.

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, in a memorandum. Chief Judge DiFiore and Judges Garcia, Singas, Cannataro and Troutman concur. Judge Rivera dissents in an opinion, in which Judge Wilson concurs.

Decided June 14, 2022