# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 18
The People &c.,
   Respondent,
  v.
Jeffery Bush,
   Appellant.

Ying-Ying Ma, for appellant.
Arieh Schulman, for respondent.

DiFIORE, Chief Judge:

Defendant challenges the voluntariness of his guilty plea, asserting that the court in its plea colloquy failed to advise him that the 20 days of community service to be imposed would be a condition of a sentence of a one-year conditional discharge. At the outset of

the sentencing proceeding, the defense counsel and prosecutor affirmatively acknowledged to the court that the bargained-for sentence to be imposed was a conditional discharge. Prior to imposition of that sentence, defendant who had the practical ability to do so, failed to protest or otherwise seek to withdraw his guilty plea. As a result, defendant's claim that the court's imposition of an alleged new sentence rendered his guilty plea involuntary is unpreserved for our review.

After initially being charged by felony complaint in May 2017, defendant was indicted in July 2017, for two counts of criminal possession of a controlled substance in the third degree, a class B felony offense, and six other related offenses. On September 18, 2017, in open court, the People offered a reduced plea to the class A misdemeanor of criminal possession of a controlled substance in the seventh degree, the eighth count of the indictment, with a promised sentence of probation. An off-the-record discussion with the court and counsel ensued, whereupon the People changed their sentence offer to 20 days of "community service instead of probation." Defense counsel sought a recall of the case to confer with defendant. On the recall, the court informed defendant that defense counsel had conveyed to the People defendant's interest in community service and characterized the People's plea offer as "reasonable." Defense counsel accepted the plea offer and stated that "the plea is conditioned on him doing 20 days of community service, and if he does not do the community service, he can face up to one year [in] jail." A mandatory surcharge and a six-month driver's license suspension were undisputedly part of the promised sentence at the time of the plea.

Defendant was placed under oath and the court conducted a thorough plea allocution, eliciting defendant's waiver of his constitutional rights and his admission of his factual guilt to the reduced crime. Defendant confirmed that he had sufficient time to speak with his attorney and was satisfied with his representation. When defendant expressed concern about "the timing of the community service," the court responded, "I will give you more than enough reasonable time to do it." The court also advised defendant that, as a condition of the plea, he could not be rearrested and "must return on the adjournment date." Defense counsel stated that defendant wanted to speak with his employer about scheduling the community service. In response, the court told defendant that it would not "specify" a schedule for the performance of the community service. The court again elicited from defendant that he had adequate time to speak with his counsel and was satisfied with counsel's representation.

In pleading guilty to the misdemeanor count, defendant was advised by the court that the sentence promise would be "20 days of community service." The court further stated "[y]ou understand you can't get re-arrested. You must return on the adjournment date. And you must complete the community service or else there will be a one year jail alternative." Defendant indicated that he understood and the matter was adjourned for sentencing to November 28, 2017.

At the outset of the sentencing proceeding, defense counsel advised the court that defendant had completed his 20 days of community service. After noting that "[c]ommunity service [was] completed," the court asked the parties, "[a]nd the promise is

a C.D.?" Defense counsel and the prosecutor each replied "[y]es." The court confirmed that, during the relevant time period between plea and sentence, there had been no new arrests and then elicited from defense counsel that there was no "legal reason why sentence should not be imposed." Defense counsel and defendant each declared they were ready for sentence and defendant declined to say anything further. The court told defendant, "I'm glad you did the community service, and I'm glad the case is over." The court then imposed sentence—"[t]he sentence of the Court is a conditional discharge; $250 in court costs" and "a six-month license suspension." That same day, defendant signed the court's "conditional discharge" form, which states that defendant was sentenced to "[a] 1 year period of Conditional Discharge commencing this day." The $250 surcharge was noted on the form which also set forth the statutory conditions that defendant may be required to meet in the discretion of the court to insure that he will lead a law-abiding life "during the period of Conditional Discharge" (*see* Penal Law § 65.10 [2]). By statute the term of a conditional discharge in the case of a misdemeanor is one year (Penal Law § 65.05 [3] [b]) and the one year was completed without incident.

On direct appeal, defendant argued that his guilty plea was involuntary as the court did not mention the one-year conditional discharge sentence at the time of the plea and, as a remedy, sought dismissal of the indictment. The Appellate Division affirmed, holding that defendant's claim was unpreserved (185 AD3d 1048 [2d Dept 2020]). A Judge of this Court granted defendant leave to appeal (36 NY3d 928 [2020]) and we now affirm.

Defendant claims that the court's plea colloquy was deficient in establishing for the record the specific terms of the sentence promise, thereby infecting the voluntariness of the guilty plea. It is axiomatic that the "trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences" (*People v Ford,* 86 NY2d 397, 402-403 [1995]). Further, any sentence promise made at the time of plea is as a matter of law and strong public policy conditioned upon its being lawful (*see People v Selikoff,* 35 NY2d 227, 241 [1974]). When "a defect in a plea allocution is clear on the face of the record and implicates due process, the defendant nonetheless must preserve his or her claim that the defect made the plea involuntary unless the defendant has no practical ability to do so" (*People v Williams*, 27 NY3d 212, 221-222 [2016]; *see also People v Conceicao,* 26 NY3d 375, 381 [2015]).

On this record, there can be no dispute that defendant neither objected to the sentence promise as described during either the plea or the sentencing proceeding nor otherwise protested the voluntary nature of his guilty plea. To be sure, defendant did not move to withdraw his guilty plea prior to the imposition of sentence as required by CPL 220.60 (3). Instead, defendant belatedly asserts on direct appeal that his plea was involuntary because the court failed to advise him at the plea proceeding of the sentence to be imposed. But, he does not seek the vacatur of his guilty plea and the reinstatement of the indictment, the very relief provided upon a timely CPL 220.60 (3) motion. Rather, he seeks dismissal of the indictment. To advance this claim on appeal, defendant invokes the narrow exception to the preservation requirement involving the plea allocution, claiming

"the particular circumstances of [the] case reveal that [he] had no actual or practical ability to object to an alleged error in the taking of [the] plea that was clear from the face of the record" (*Conceicao,* 26 NY3d at 381*; see also People v Louree,* 8 NY3d 541, 545-546 [2007]).[1]

The record demonstrates that, prior to the imposition of sentence, defendant had the actual and practical ability to object and preserve the claim he now makes—that his guilty plea was involuntary because of a deficient plea allocution as to the sentence promise, a direct consequence of the plea. The record before us is plain. At the outset of the sentencing proceeding, the court confirmed that the agreed-upon sentence was a conditional discharge, asking both defense counsel and the People if "the promise [wa]s a CD?" Both indicated that was correct. The court went on to inquire whether there was "[a]ny legal reason why sentence should not be imposed" and whether defendant was "[r]eady for sentence," with defense counsel responding "No" to the first question and defendant responding "Yes" to the second. The court provided defendant an opportunity to speak, asking if he wished to say anything, and defendant answered "No." If the sentence the court stated it intended to impose differed from what defendant understood the sentence promise to be at the time of the plea—or if defendant did not understand what a "CD" was, as our dissenting colleagues speculate—there was an adequate opportunity

---

[1] The additional exception to preservation for an illegal sentence, applicable where it is apparent from the record that the sentence imposed is not authorized under the law, does not lie here, since the one-year conditional discharge sentence actually imposed is an authorized sentence for the misdemeanor conviction (*see* Penal Law § 60.01 [2] [a] [i]; *see People v Samms*, 95 NY2d 52, 56 [2000]).

prior to the imposition of sentence to say so. Defendant could have objected or moved to withdraw his plea pursuant to CPL 220.60 (3), as required in order to preserve a claim that his plea was involuntary (*see People v Murray*, 15 NY3d 725 [2010]; *People v Crowder*, 24 NY3d 1134 [2015]; *Williams*, 27 NY3d at 219-222). Had he done so, the court would undoubtedly have explored the terms of the parties' plea agreement. If the sentence of a conditional discharge had not been discussed with defendant, as defendant now contends, the remedy would have been to allow the withdrawal of the plea, and the restoration of the indictment pursuant to CPL 220.60 (3), and not the dismissal of the indictment, which the dissent would grant. In failing to object at the proper time, defendant is not entitled to a greater remedy on appeal.[2] Stated otherwise, "[b]ecause defendant could have sought relief from the sentencing court in advance of the sentence's imposition, [the] rationale for dispensing with the preservation requirement is not presently applicable" (*Murray*, 15 NY3d at 727).[3]

---

[2] We further note that the cases on which the dissent relies in asserting that there should a dismissal here—*People v Tyrell*, 22 NY3d 359, 366 (2013), *People v Hightower*, 18 NY3d 249, 253 (2011) and *People v Dreyden*, 15 NY3d 100, 104 (2010)—involved relatively minor charges. This Court has never dismissed a felony indictment on the ground that further proceedings would serve no useful "penological purposes" (*People v Allen*, 39 NY2d 916, 918 [1976]; *see People v Thiam*, 34 NY3d 1040, 1047 n 5 [2019] [DiFiore, Ch. J., concurring]; *compare Conceicao*, 26 NY3d at 385 n * [finding a penological purpose to remittal of the class A misdemeanor charge of criminal possession of a controlled substance in the seventh degree to local court for further proceedings]).

[3] Defendant's reliance on *People v Turner* (24 NY3d 254 [2014]) is misplaced as defense counsel there did not make an affirmative representation at the outset of the proceeding that the sentence to be imposed was the same as the sentence promised in the plea bargain agreement. In addition, the court did not advise the defendant in *Turner* that the sentence

In arguing that preservation of the issue was not required in the court of first instance, both defendant and the dissent disregard defense counsel's affirmative acknowledgement in response to the court's inquiry at the outset of the sentencing proceeding—wherein both defense counsel and the prosecutor, in defendant's presence, affirmatively confirmed that a "CD" was the promised sentence. Defendant further ignores the fact that he affirmed during the plea allocution that he had sufficient time to speak with counsel concerning the terms of the plea agreement (*see Conceicao*, 26 NY3d at 383). It appears that defense counsel did not move to withdraw the guilty plea or ask for further clarification because his understanding of the promised sentence was consistent with the conditional discharge sentence intended to be imposed. Defendant's theory on appeal that the promised sentence, as clearly recorded by the parties and the court at the sentence proceeding, conflicted with his understanding of the consequences of his plea depends on the notion that defense counsel failed to advise his client of the sentence offer (*see Missouri v Frye*, 566 US 134 [2012]) and then made a false representation at the outset of the sentencing proceeding. Since this theory is not supported by the record, if a credible claim to that effect exists based on facts dehors the record, defendant's remedy lies in a postconviction CPL article 440 motion, wherein defendant can make the requisite sworn factual allegations to support a claim of a constitutional deprivation of the assistance of counsel.

---

to be imposed included the mandatory five years of PRS until "the middle of sentencing," depriving her of "sufficient opportunity to move to withdraw her plea" (24 NY3d at 259).

Indeed, this case demonstrates why we have a preservation rule. Defendant's lack of protest in the court of first instance has encouraged speculation as to the understanding of the parties at the time of the plea in contradiction of the extant record.[4] For instance, the dissent asserts that the original sentence promise, notwithstanding the court's clear warning of a potential sentence of one-year incarceration, may have been a stand-alone condition of a "noncarceral sentence of 20 days of community service" (dissenting op at 1)—a sentence not authorized by the Penal Law and therefore unlawful. The legislature, not the Court, defines the permissible sentences that must be imposed on a conviction (*see People v Rodney E.*, 77 NY2d 672 [1991]; Penal Law § 60.00 [1]). The mechanism devised by the legislature for imposing a revocable sentence—i.e., probation or a conditional discharge—through which community service with defendant's consent may be imposed as a condition and for which the defendant is subject to incarceration if the condition is not satisfied, is set forth in Penal Law §§ 60.01 (2), 65.05 and 65.10 (2) (h). The plea allocution is unequivocal that defendant consented to the condition of community service and faced the maximum penalty of a one-year jail sentence if he failed to complete the condition. Although the court's description of the promised sentence was imprecise, the plea minutes alone demonstrate that the parties agreed to a revocable sentence as authorized by Penal

---

[4] The preservation requirement promotes the development of an accurate factual record in order to prevent the advancement of false or unsupported narratives on direct appeal. The dissent's suggestion that the prosecution "renege[d]" on the plea promise (*see* dissenting op at 8-9) while defense counsel and the court acquiesced in that misconduct can also serve as a basis for a CPL 440 motion. Of course, there will need to be a factual premise for such a claim—a premise not to be found on this record.

Law § 65.05, with conditions, and the imposition of an alternative sentence of one-year incarceration if the conditions were violated. The parties' express rejection of the revocable sentence of probation lends further record support to the conclusion that they agreed to the conditional discharge sentence, a fact that was later confirmed by the parties at sentencing.[5] Defendant on appeal acknowledges, as he must, that the condition of community service "cannot be imposed independently of issuing a conditional discharge" (reply brief for appellant at 10) and the record does not support any conclusion to the contrary.

In response to the dissent's claim of concessions made by the parties on appeal, our precedent is clear—we are not prevented from performing our judicial function by purported confessions of error of either the defendant or the district attorney by way of an interjection of alleged facts dehors the record (*see Selikoff*, 35 NY2d at 243; *People v Berrios*, 28 NY2d 361, 366-367 [1971]). Finally, to the extent our dissenting colleagues rely on statements made by counsel at oral argument offering a novel view of the case without regard to the factual record, the issue before us is whether defendant had an opportunity to preserve the argument he now asserts. He did. And, therefore, his failure

---

[5] Indeed, the original court file contains a form entitled "**COURT ORDER FOR INVESTIGATION AND REPORT**" directed to the New York City Department of Probation, which detailed the "**SENTENCE AGREEMENT** the Court made with the defendant: 20 days CS → CD + 6 mo LS

unsuccessful → 1 yr NYCDOCS."

to timely move to withdraw his plea renders his claim unpreserved, precluding our further review.[6]

In the end, the record as a whole demonstrates that the plea bargain agreement included a revocable sentence with conditions, including community service, and, when the court, whose role is to oversee and supervise the plea bargain process, confirmed that understanding with the parties at the outset of the sentencing proceeding, their affirmation that a conditional discharge was the agreed-upon disposition was a "joint representation that no other undisclosed term of agreement, different from the court's express understanding, existed between them" (35 NY2d at 243). Since defendant had the actual and practical ability to raise his current argument at the outset of the sentencing proceeding and prior to the imposition of sentence, his failure to do so precludes our review.

Accordingly, the order of the Appellate Division should be affirmed.

---

[6] In oral argument, the People deviated from their brief to this Court and asserted that defendant's promised sentence was an unconditional discharge, which, by definition (Penal Law § 65.20), includes no conditions, let alone 20 days of community service. The appellant at oral argument rejected that belated claim. There are no references in the record to any sentence promise of an unconditional discharge and the People's contrary assertion is belied by both the sentencing minutes and the law as to authorized sentences. Nor is there any reference that a one-year jail term was the sentence to be imposed if community service was not completed before the sentencing date. The plea minutes reflect that the court was quite specific that it was not placing any timetable on the completion of the community service, consistent with a sentence promise of a one-year conditional discharge. In any event, the People made no errant statements or concessions with respect to the preservation issue, which turns on the undisputed content of the sentencing transcript and is dispositive in this case.

RIVERA, J. (dissenting):

Defendant Jeffrey Bush pleaded guilty to a reduced charge in exchange for a noncarceral sentence of 20 days of community service, along with a mandatory surcharge and temporary suspension of his driver's license. When defendant appeared after completing his community service and without further criminal incident, the sentencing should have been in accord with the prosecutor and defendant's agreement. Instead, the

- 1 -

court imposed additional year-long conditions that were not agreed to and never mentioned during the plea colloquy or prior to sentencing. As a consequence, defendant's plea is invalid (*see People v Turner*, 24 NY3d 254, 258 [2014] ["To meet due process requirements, a defendant 'must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action.' Without such procedure, vacatur of the plea is required"], quoting *People v Catu*, 4 NY3d 242, 245 (2005)]).

No one disputes that the conditional sentence actually imposed is more severe than the conditions described to defendant in open court prior to his plea. Nor did defendant commit any misconduct or violations of conditions imposed while awaiting sentencing that might have justified the court's deviation from the plea agreement. The prosecutor concedes that the sentence was imposed in error, and the record bears this out because the only conditions mentioned as part of the plea were those expressly stated on the record during the colloquy. The only dispute is whether defendant preserved his meritorious challenge to his conviction on the ground that he did not knowingly, intelligently, and voluntarily plead guilty in exchange for the sentence imposed. Given that the court gave no warning that it would impose a sentence harsher than defendant agreed to in exchange for his guilty plea, defendant could not have objected prior to the actual sentencing that he was denied the benefit of his plea bargain. Therefore, the conviction must be reversed, and because defendant completed the erroneously imposed sentence years ago, no penological purpose is served by remitting for further proceedings, and the indictment should be

dismissed (*People v Hightower*, 18 NY3d 249, 253 [2011]; *People v Dreyden*, 15 NY3d 100, 104 [2010]).

## I.

Defendant was driving one night when a police officer pulled him over for changing lanes without signaling. As a result of the stop and subsequent search of defendant, he was charged with traffic law offenses and drug possession. Defendant agreed to the prosecutor's offer to plead guilty to the Class A misdemeanor of criminal possession of a controlled substance in exchange for a sentence of community service and no jail time.

The court, prosecutor, and defense counsel described the details of the agreement and confirmed defendant's understanding of the terms during the plea colloquy:

> "[COURT]: What is the offer? . . . People are offering a misdemeanor, correct? We need the People's consent to reduce this from a felony.
>
> [PROSECUTOR]: The offer is community service instead of probation. I will do 20 days.
>
> . . .
>
> [COURT]: Drugs were allegedly found on his waistband. Probation was not offering an unreasonable offer. Your lawyer spoke to the district attorney who said you were interested in community service which is more than reasonable but it's your opinion that counts. [The prosecutor] is offering you today a misdemeanor and 20 days of community service.
>
> [PROSECUTOR]: People originally wanted 30 days in lieu of probation. Defense asked me for 15. I offered the 20.
>
> . . .
>
> [DEFENSE COUNSEL]: He will now plead guilty to [] Criminal Possession of a Controlled Substance in the Seventh Degree, a Class A misdemeanor, and the plea is conditioned on him doing 20 days of community service, and if he does not do

the community service, he can face up to one year jail. If he does the community service, he owes $200 in mandatory surcharge.

[COURT]: It's $250.

[DEFENSE COUNSEL]: $250. I'm sorry. And there will be a six-month license suspension.

[COURT]: It's your decision. I respect that. It's a reasonable offer. Did you have enough time to speak to your lawyer?

[DEFENDANT]: Yes.

[COURT]: Do you need any more time?

[DEFENDANT]: No."

In response to defendant's concern, the court stated defendant would have time to complete the community service, and repeated several times that in order to secure the noncarceral sentence he had to complete the community service, not get rearrested, and return on the scheduled court date.

"[DEFENDANT]: I understand. It's just the timing of community service.

[COURT]: I will give you more than enough reasonable time to do it. Also, you can't get re-arrested, and you must return on the adjournment date. I will give you time to do it.

. . .

[COURT]: You are pleading guilty to a misdemeanor which is a crime, and the promise is 20 days of community service and we will work around your schedule?

Is that your understanding and do you agree to that?

[DEFENDANT]: Yes.

. . .

[COURT]: You understand you can't get re-arrested. You must return on the adjournment date. And you must complete the community service or else there will be a one year jail alternative. Do you understand?

[DEFENDANT]: Yes."

Defendant satisfied these promises. When he appeared for sentencing as scheduled approximately two months later, the court acknowledged that defendant had completed his community service and that there were no new arrests and proceeded with sentencing:

> "[COURT]: Community service completed. And the promise is a C.D.?
>
> [DEFENSE COUNSEL]: Yes.
>
> [PROSECUTOR]: Yes.
>
> [COURT]: No new arrests?
>
> [PROSECUTOR]: Not that I'm aware of, no.
>
> [COURT]: Any legal reason why sentence should not be imposed?
>
> [DEFENSE COUNSEL]: No, Judge.
>
> [COURT]: Ready for sentence?
>
> [DEFENDANT]: Yes.
>
> [COURT]: Ready, [defense counsel]?
>
> [DEFENSE COUNSEL]: Yes, Judge.
>
> [COURT]: Does your client wish to say anything?
>
> [DEFENDANT]: No.
>
> [COURT]: Good. I'm glad you did the community service, and I'm glad the case is over.
>
> [Prosecutor], do you wish to say anything?
>
> [PROSECUTOR]: No.
>
> [COURT]: Thank you, both sides. The sentence of the Court is a conditional discharge; $250 in court costs."

The Conditional Discharge form dated the same day provides that defendant was subject to a "1 year period of Conditional Discharge commencing on this day" and that,

"during the period of Conditional Discharge the defendant must lead a law-abiding life and must comply with the following conditions: 1. Avoid injurious or vicious habits, do not visit unlawful or disreputable places; and do not consort with disreputable people. 2. Work faithfully at a suitable employment or pursue a course of study or vocational training that can lead to suitable employment. 3. Support dependents and meet other family responsibilities."

The form also warns that,

"[y]our failure to conform to any of the conditions, or your commission of an additional offense other than a traffic infraction, is a violation of the Conditional Discharge. You have a right to be present at any hearing held to determine if you have violated your Conditional Discharge. If you intentionally fail to appear at a Violation Of Conditional Discharge Hearing, a hearing may be held in your absence, your Conditional Discharge may be revoked, and a warrant may be issued for your arrest."

Defendant complied and the terms of the conditional discharge expired during the pendency of his appeal to the Appellate Division. That Court affirmed the conviction on the ground that defendant failed to preserve his claim that the plea was not knowing, intelligent, and voluntary because the lower court failed to inform him in advance that he would be sentenced to a conditional discharge (*People v Bush*, 185 AD3d 1048 [2020]).

On appeal to this Court, defendant argues, as he did below, that the plea is invalid because he was sentenced to a one-year conditional discharge never mentioned during the plea colloquy; that, prior to sentencing, he upheld his side of the bargain and served the 20 days of community service required under his agreement with the prosecutor, as described by the court during the colloquy, and that he did not have an opportunity to challenge the sentence of conditional discharge before it was imposed. Defendant is correct that the plea

is invalid based on what the parties agree is the discordance between the plea agreement and the sentence imposed.

## II.

### A.

In order to be valid, a plea must be knowing, intelligent, and voluntary (*see People v Lopez*, 6 NY3d 248, 256 [2006]). To that end, the court must "ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences" (*People v Louree*, 8 NY3d 541, 544 [2007], citing *People v Ford*, 86 NY2d 397, 402-403 [1995]; *see also Turner*, 24 NY3d at 258, quoting *Catu*, 4 NY3d at 244-245). The court must advise the defendant of direct consequences of the plea, which includes the sentence (*see People v Harnett,* 16 NY3d 200, 205 [2011] ["The direct consequences of a plea—those whose omission from a plea colloquy makes the plea per se invalid—are essentially the core components of a defendant's sentence: a term of probation or imprisonment, a term of post-release supervision, a fine"]). "Undoubtedly, in the vast majority of plea bargains the overwhelming consideration for the defendant is whether [they] will be imprisoned and for how long" (*People v Gravino*, 14 NY3d 546, 559 [2010]).

"[T]he plea bargaining process affords the accused the opportunity to obtain a conviction on reduced charges and more lenient punishment in a truncated process that 'hopefully start[s] the offender on the road to possible rehabilitation'" (*People v Thomas*, 34 NY3d 545, 557 [2019], quoting *People v Selikoff*, 35 NY2d 227, 233 [1974]). Plea bargaining "provides a means where, by mutual concessions, the parties may obtain a

prompt resolution of criminal proceedings with all the benefits that enure from final disposition" (*People v Seaberg*, 74 NY2d 1, 7 [1989]).

"It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence—because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange" (*Mabry v Johnson*, 467 US 504, 508 [1984]). This only holds true if both sides are clear on the specifics of the agreement and comply with their end of the bargain. "Although the analogy may not hold in all respects, plea bargains are essentially contracts" (*Puckett v United States*, 556 US 129, 137 [2009]). Thus, it is a matter of "essential fairness . . . that a promise made by a State official authorized to do so and acted upon by a defendant in a criminal matter to his detriment is not lightly to be disregarded" (*People v McConnell*, 49 NY2d 340, 349 [1980]). In *McConnell*, our Court acknowledged the "detrimental effect on the criminal justice system that will result should it come to be believed that the State can renege on its plea bargains with impunity notwithstanding defendant's performance" (*id*.). Put another way, the legitimacy of a plea bargain depends on the assurance that the government will keep its promise, especially once a defendant has upheld their side of the bargain. Otherwise, there would be no incentive on the part of a defendant to negotiate and give up their rights to trial in exchange for a particular sentence (*see* Michael Cicchini, *Broken Government Promises: A Contract-Based Approach to Enforcing Plea Bargains*, 38 NM L Rev 159, 159 [2008] ["(T)he government compromises the integrity of the system when it makes promises as part of a plea bargain and then reneges on those promises, often after obtaining from the defendant

the very benefit for which it bargained. This negative impact is magnified when the government reneges without good cause due to its own negligence or even bad faith. When courts refuse to hold the government to its end of the bargain, the courts encourage further similar behavior"]; Peter Westen & David Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 Cal L Rev 471, 511-512 [1978] ["(T)he requirement that a guilty plea be made intelligently forbids the prosecution from breaching promises made to the defendant with respect to the consequences of his plea. This is because by breaching its promises, the state fails to do what is reasonably within its power to assure the accuracy of its representations to the defendant with respect to the alternatives open to (them), and by this failure abridges (their) constitutionally protected interest in choosing what is in (their) 'best interests'"]).

Apart from the equities, there is the practical significance of plea bargains to individuals and our legal system. As the United States Supreme Court explained in *Missouri v Frye*, "[t]o a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system" (566 US 134, 144 [2012] [citations omitted]). Therefore, as I have previously stated, "[t]he constitutional duty to ensure that a defendant has a full understanding of what [their] plea connotes is of particular importance, given the central role of the plea bargaining process in criminal courts" (*People v Monk*, 21 NY3d 27, 34 [2013, Rivera, J., dissenting]). A plea cannot be constitutionally valid if the defendant pleads guilty in exchange for a particular

sentence and a harsher sentence is imposed with no grounds to justify the deviation from the mutually agreed upon terms.

B.

A defendant does not have to preserve a challenge to the voluntariness of a plea where they "had no actual or practical ability to object to an alleged error to the taking of the plea that was clear from the face of the record" (*People v Conceicao*, 36 NY3d 375, 381 [2015]). It is axiomatic that, absent an error that is clear from the record, a defendant has no basis to object because they are not aware of a defect (*see Louree*, 8 NY3d at 545-546). In other words, "a defendant can hardly be expected to move to withdraw [their] plea on a ground of which [they] ha[ve] no knowledge" (*id.* at 546).

Mere reference to a missing or altered term of the sentence, however, may not be sufficient to alert a defendant to a constitutional violation that requires preservation. That determination turns on the record of events as they unfold. Thus, in *Turner*, where the court first mentioned the length of the postrelease supervision (PRS) at sentencing and where the defendant acknowledged to the court that they were aware of the term prior to imposition of the sentence, we concluded that the claim did not need to be preserved because "the defendant did not have sufficient knowledge of the terms of the plea at the plea allocution and, when later advised, did not have sufficient opportunity to move to withdraw [the] plea" (24 NY3d at 259). We further noted that "the prosecutor, not the court, led the sentencing colloquy and may have misled defendant by telling her that PRS 'was part of her plea'" (*id.*).

III.

The record confirms defendant's version of the plea agreement as agreed upon by the parties and the court at the plea allocution: the prosecutor offered defendant 20 hours of community service in exchange for his guilty plea on the Class A misdemeanor, with the caveat that noncompliance put defendant at risk of up to one year in jail. Defendant accepted that offer. He was further informed that the plea was subject to a $250 mandatory surcharge and a six-month driver's license suspension. The court also informed defendant that to secure the promised sentence, defendant could not get rearrested and must return on the adjournment date.

This was the full extent of the parties' agreement. If it were otherwise, the parties and the court would have made that plain on the record, but there is no mention of any other condition or that defendant's confirmed sentence was intended to be one year. Indeed, that period was raised as a carceral sentence if defendant failed to complete the community service, not as a firm period of limitation on his liberty. Notably, the court's only correction was to defense counsel's mistaken statement that the surcharge was $200 rather than $250.

At sentencing, the court acknowledged that defendant completed the required community service and had not been rearrested. The court did not mention that defendant was nevertheless going to be sentenced to additional conditions lasting a year. Defendant's case is even more compelling than the *Turner* defendant's because, while that defendant at least had been advised that PRS was a sentence component but not informed of the length until sentencing, defendant here was never told that the conditions would last for a year.

And he could not have believed he was subject to anything other than a short-term condition, otherwise he would not have voiced his concern that he needed enough time to complete the 20 days of community service required to avoid the one year of jail time, of which he was made aware multiple times during the plea colloquy. Simply stated, in accordance with our case law, a plea cannot be knowing, voluntary, and intelligent when a defendant is informed, as was the case here, that the plea agreement is limited to a finite number of requirements and conditions, but the court then imposes a more severe sentence without defendant's full knowledge of the same and without an opportunity for defendant to withdraw the plea before sentencing (*see id.*; *Louree*, 8 NY3d at 545-546).

Contrary to the majority's assertion, there is no preservation bar to defendant's challenge (*see* majority op at 2). The majority concludes that although defendant failed to object, he had an opportunity to preserve his claim because he could have spoken up when—moments before imposing sentence—the court confirmed that the sentence was a "CD" (*see id.* at 1-2). Even a cursory read of the record establishes that the court's reference to the shorthand "CD" for a "conditional discharge" was insufficient to place defendant on notice that the conditional aspect of the sentence was anything other than what he had agreed to at the plea—20 days of community service. It is not speculation to recognize that nothing in that two-letter acronym would alert defendant that something was amiss and that he was going to be sentenced to one year of conditions (*see id.* at 6).

The fact that defense counsel also used the CD shorthand does not affect the analysis. In *Turner,* the defendant's counsel failed to object to the addition of PRS even

though the defendant acknowledged having spoken with counsel (24 NY3d at 259). Same here where defendant's counsel failed to object to the conditional discharge (*cf.* majority op at 6). And in *People v McAlpin*, the Court clarified that a defendant who is told before the imposition of the sentence that they would be subject to PRS did not have sufficient time to object to the sentence (*see* 17 NY3d 936, 938 [2011]). The Court came to this conclusion despite the fact that defense counsel "agreed with the sentencing court's statement on the record that the defendant had been informed of postrelease supervision at the plea proceeding" (*id.*). Same here where counsel confirmed the sentence was a "CD" (*cf.* majority op at 7 and n 3).

The majority also attempts to distinguish this case from *Turner* on the basis that counsel did not speak at the outset of the proceeding and the court did not advise the defendant about the PRS "until 'the middle of sentencing'" (majority op at 7-8 n 3, quoting *Turner*, 24 NY3d at 259). However, as the sentencing transcript in *Turner* makes clear, the discussion of the PRS component of the sentence in *Turner* was raised by the prosecutor just prior to the court's imposition of the sentence. We can just as well say in this appeal, as in *Turner*, that the issue was raised in the course of sentencing—whether in the beginning, middle, or end—is of no material difference, since the common thread in the analysis is that the court was in the process of sentencing defendant. Further, the prosecutor's affirmation of a CD here is potentially as misleading as the prosecutor's statement in *Turner* that PRS "'was part of her plea'" (24 NY3d at 259).

This all leads to one conclusion, that defendant did not have an opportunity to challenge the sentence when the court failed to adequately describe it except in shorthand, moments before imposing the sentence. Moreover, defendant could not have understood that he was subject to conditions that extended beyond the hearing—a sentence more severe than he pleaded to—when the court suggested the opposite by prefacing the sentence by saying, "I'm glad you did the community service, and I'm glad the case is over."

Both parties have represented to this Court that the sentence was imposed in error because defendant agreed to 20 days of community service in exchange for pleading guilty to a lesser count, completed that condition prior to sentencing, but the court imposed a more severe one-year conditional sentence. Put another way, the parties confirm that the plea that was voluntarily, knowingly, and intelligently entered at the colloquy was in exchange for a different sentence from that which was actually imposed.[1] The majority fails to explain why defendant's conviction should stand when the prosecutor and defendant agree that the terms of the bargained-for plea differ from the sentence. Instead, the majority contends that the parties disagree as to the terms of the plea (*see* majority op at 9-10). That is a convenient but inaccurate characterization of the record and the

---

[1] The majority misrepresents defendant's claim as turning on an defense counsel's alleged ineffectiveness for failure to properly explain the plea terms (*see* majority op at 8). But the majority is correct about one thing, the benefits of an accurate factual record "to prevent the advancement of false or unsupported narratives on direct appeal" (*id.* at 9 n 4). However, the only unsupported narrative spun here is the majority's view that the plea agreement was for a one year term of additional conditions beyond the 20 days of community service—even though the record and the parties' acknowledged understanding of the prosecutor's offer are to the contrary.

representations to this Court.[2] The District Attorney's position on appeal has always been that defendant failed to preserve his challenge, thus barring consideration of the merits of his claim. That line of argumentation does not turn on whether the sentence deviates from the parties' plea agreement. From that perspective, it is not surprising that the District Attorney acknowledges what he views as an irrelevant fact—the parties' agreement was for the 20 days of community service offered by the prosecutor at the plea colloquy, full stop.

The majority engages in speculation about prosecutorial choices and the negotiations with defendant when it asserts, first, that the parties intended a plea agreement for a revocable sentence with conditions that included community service and, second, that the parties affirmation to the "CD" was in reality "a 'joint representation that no other undisclosed term of agreement, different from the court's express understanding, existed between them'" (*id.* at 11, quoting *Selikoff,* 35 NY2d at 243). As to the majority's characterization of the sentence, that is not how the prosecutor described the offer and the court did not say that the plea was for a revocable sentence with conditions. We are neither the parties to the agreement nor the sentencing court, and we are thus left with only the record before us. And if the majority is correct as to how the agreement should be viewed,

---

[2] The record speaks for itself. The prosecutor at the plea colloquy stated expressly that his offer was 20 days of community service, and defendant accepted that offer. Then, at oral argument before this Court, the Assistant District Attorney opened by acknowleding that this was the parties' agreement (*see* tr at 12, available at https://www.nycourts.gov/ctapps/arguments/2022/Feb22/Transcripts/021022-18-Oral%20Argument-Transcript.pdf). We must accept the arguments made by the parties, and not what any member of this Court might have said or done if they were litigating the case.

then the court was under a constitutional duty to ensure that defendant understood the nuances of such a sentence at the plea allocution (*see Catu*, 4 NY3d at 244-245). But the court did not make such an effort, and that error—if it was error at the plea—cannot be avoided when the sentencing court failed to explain that the passing reference to the "CD" was, as the majority now contends, essentially a revocable sentence based on defendant's completion of the community service condition. In any case, the majority's proposed understanding of the sentence is not the actual sentence imposed.

The majority's second assumption is belied by the parties' understanding of the bargained-for plea as described on the record at the plea colloquy and before this Court. If the majority were correct on this point, then defendant cannot be expected to challenge what those with legal training failed to clearly express, instead relying solely on shorthand insider references that could have been misleading or misinterpreted. Our system relies on what the parties and the court understand and state on the record, not on the majority's bare speculation. Try as it may, the majority cannot change what occurred here to support its affirmance of the conviction merely by characterizing the court's description of the sentence as "imprecise" (*see* majority op at 9). There is no uncertainty or vagueness in the court's statements to defendant nor in the prosecutor's express offer of community service. The imprecision is in the majority's analysis.

## IV.

Defendant completed his community service as required by the plea agreement in advance of the sentencing hearing, and yet when he returned to court he was additionally subjected to a one-year conditional discharge. The terms of the sentence imposed in error

have expired now. Given the unique circumstances of this case—specifically the parties'
representation that the sentence was not the one agreed to, the unavailability of specific
performance by the People as a remedy for this error, and defendant's completion of the
wrongfully imposed and wrongful sentence—reversal is required.

Moreover, no penological purpose is served by remittal for further proceedings. To
summarize, first, defendant lived up to his end of the bargain before the sentencing hearing
by completing his community service and abiding by all the requirements expressly stated
at the plea colloquy to avoid a year in prison. Remittal risks additional punishment even
though he complied with the terms of the agreement. Second, without any conduct by
defendant justifying a deviation from the promised sentence, defendant served a harsher
sentence than agreed to by the parties. Third, as the majority states, defendant completed
that sentence "without incident," meaning he abided by the additional conditions for a full
year (*see* majority op at 4). Fourth, the prosecutor negotiated defendant's plea to a
misdemeanor in satisfaction of the entire indictment. That decision was presumably
informed, in part, by the prosecutor's assessment of the strength of their case and the facts
underlying defendant's arrest. Thus, the representative of the People of the State of New
York concluded that defendant's community service was an appropriate penalty given the
particulars of his case.

Reversal and dismissal of the indictment protect the integrity of the plea bargaining
process, as this holds defendant to his end of the bargain but provides him with meaningful
relief for serving a more severe sentence than intended by both defendant and the
prosecutor. This outcome is not only compelled by our law under the facts of this case, but

it is the only just resolution now that the sentence has been served (*see e.g. People v Tyrell*, 22 NY3d 359, 366 [2013] [plea vacated after sentence completed]; *Hightower*, 18 NY3d at 253 [accusatory instrument dismissed where defendant served the sentence]; *Dreyden*, 15 NY3d at 104 [accusatory instrument dismissed because defendant was sentenced to time served]).[3]

The majority's affirmance is a drastic departure from our prior precedent and shows little regard for the bargain struck by the parties. I dissent.

Order affirmed. Opinion by Chief Judge DiFiore. Judges Garcia, Singas and Cannataro concur. Judge Rivera dissents in an opinion, in which Judges Wilson and Troutman concur.

Decided March 22, 2022

---

[3] Contrary to the majority's assertion, the counts originally filed against a defendant are not dispositive of whether the indictment should be dismissed for lack of a penological purpose (*see* majority op at 7 n 2). Courts, including this Court, have never so held. In fact, this is an undeveloped area of the law; decisions are at times made without reference to fixed criteria. As the author of the majority opinion here has previously acknowledged, "we have on occasion dismissed an accusatory instrument 'without supporting rationale for the unusual result'" (*People v Thiam*, 34 NY3d 1040, 1049 n 5 [2019, DiFiore, Ch. J., concurring], quoting *People v Allen*, NY2d 916, 918 [1976]). Instead, the decision to dismiss turns on the circumstances of the case. The fact that defendant was initially charged with a felony does not, as the majority would have it, limit defendant's remedies on this appeal. And, as I have discussed, there is plenty of rationale for dismissal here.